**RILEY CONSTRUCTION COMPANY, Inc., Appellant,**

**v.**

**Arvin E. CATES et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 16, 1962.

Rehearing Denied May 18, 1962.

Ben B. Hardy, Hardy & Hardy, Louisville, for appellant.

George B. Ryan, Clyde L. Breland, Jr., Stanley Badesch, Smith & Smith, Lee Curd Miller, Joe A. Wallace, Garner M. Petrie, Richard C. Oldham, Louisville, for appellees.

CULLEN, Commissioner.

Appellant Riley Construction Company, Inc. (hereinafter called "Riley") presented various claims in consolidated actions growing out of the collapse of a real estate subdivision development project. The judgment denied in substantial part the relief sought by Riley; hence this appeal.

Riley's claims originate from a contract made with one Moss, original promoter of the subdivision, under which Riley was to grade and pave streets in the subdivision. The only provision of the contract with regard to payment for the work was:

"In consideration of the foregoing, first parties agree to pay the sum total of the contract price as follows: Second party, contractor, is to receive all

of the net proceeds derived from the sale of all the lots as each lot is sold until the contractor is paid in full. It is understood and agreed, however, that there are two outstanding mortgages against the property, one in favor of H. C. and Alma B. Mann, and the other in favor of Lucien L. and Amanda Porter, which constitute prior liens on said property and which shall be satisfied and paid in full out of the first lots sold."

Riley had no equipment and therefore subcontracted the work to two other companies. Only a relatively small portion of the street work ever was done.

Because of lack of adequate financing, the subdivision project never got off the ground. Some of the streets were laid out and a portion of the grading and paving was done, but no lots were sold. Creditors' claims piled up, and eventually the land was sold at judicial sale. It brought no more than enough to pay off the two mortgages referred to in Riley's contract, and the costs of the proceedings.

One of Riley's claims (disallowed by the circuit court) was for a substantial amount of damages for breach of contract, against Vista Hills, Inc. and Lucien L. Porter. The Vista Hills corporation took over the subdivision, and assumed the contract with Riley, after Moss had become entangled in hopeless financial difficulties. Porter was an officer and director (and perhaps the only one) of the corporation. Riley maintains that the corporation never complied with the statutory conditions precedent to doing business, and therefore, under KRS 271.095, Porter was individually liable for the debts and liabilities of the corporation.

Riley's claim of breach of contract is somewhat nebulous. As far as the contractual provisions for *payment* are concerned there was no breach, because the contract provided only for payment from the sale of lots and no lots were sold. Perhaps there was an implied obligation on

the part of Moss to have the streets laid out by engineers so that the street grading and paving work could be done, and otherwise so to manage the subdivision project as to enable lots to be sold, but for reasons hereinafter stated there is no basis for imposing such obligations on the corporation.

The corporation was organized to take over the subdivision after Moss had stranded it on the financial reefs. (At that time no work had been done under the Riley contract.) The evidence supports the conclusion of the trial court that Riley was an active participant in the plan to set up the corporation, and that everyone, including Riley, knew and understood that the corporation was merely a vehicle through which it was hoped that the subdivision project could be salvaged. Riley knew that the corporation had no money and that no one intended to put any money into it. It was clearly understood that no one would get paid except from the sale of the lots, and that the corporation was obligated only to try to work out some way to enable lots to be sold without any further capital's being obtained.

Under these circumstances there is no ground upon which it could be said that the corporation breached any implied obligation of the contract with Riley. Since the corporation incurred no such liability, there was no liability which would attach to Porter as an officer.

Riley's second claim is that because of false and fraudulent representations made by Porter, and the concealment of a "side contract" between Porter and Moss, as a result of which Riley was induced to cause his subcontractors to commence some of the grading and paving work, Porter should have been deprived of the lien of his mortgage (which would result in some of the proceeds of the judicial sale of the subdivision being available to pay such of Riley's claims as were allowed). It is sufficient to say that the evidence sustains the

finding of the trial court that there was no fraudulent misrepresentation or concealment.

Riley also contends that Porter did not prove the amount of his mortgage lien. In our opinion there was adequate proof of the original principal amount of the mortgage. Moss, the mortgagor, defaulted in the action and no claim was made on his behalf that the full original principal was not due. Riley did not prove that any payments had been made to reduce the principal, and we think the burden was on him to do so.

A further contention of Riley is that the court erred in determining that the land was indivisible for purpose of the judicial sale. A trial commissioner who heard the proof reported that the land was indivisible and after a hearing the court so found. In our opinion the court had adequate basis for the finding.

Riley makes several other contentions which are purely academic, because even if the contentions were upheld Riley would not benefit in the way of any practical relief on his various claims.

The judgment is affirmed.